IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANU SAHAY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-4180 |
| | : | |
| VOYAVATION, LLC, *et al.* | : | |
| MCKENNA BLINMAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-38 |
| | : | |
| VOYAVATION, LLC, *et al.* | : | |
| GODFREY PETITFRERE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-1046 |
| | : | |
| VOYAVATION, LLC, *et al.* | : | |
| DAVID BOGDAN, CAMERON ROGERS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-3313 |
| | : | |
| VOYVATION LLC, *et al.* | : | |
| | : | |
| OLAMIDE FAJIMOLU | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-4561 |
| | : | |
| VOYAVATION, LLC, *et al.* | : | |
| LILIANA MORA-CHEN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-4563 |
| | : | |
| VOYAVATION, LLC, *et al.* | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                        August 13, 2025

A tragic bus accident in New Jersey spawned many lawsuits, some of which are here in Pennsylvania. One of the defendants is manufacturer of the bus, a Belgian company called Van Hool. Van Hool wants out of the case, challenging personal jurisdiction. Little connects Van Hool to Pennsylvania: its buses are distributed by another party in the United States, and some of them wound up in Pennsylvania. We find no basis in this record to saddle Van Hool with the distributor's purported connections to Pennsylvania. And whatever Van Hool's Pennsylvania connections could be, they have nothing to do with the accident. It is not enough that the bus was on its way to Pennsylvania, where some plaintiffs live. We lack either general or specific personal jurisdiction over Van Hool, so we grant its motion to dismiss.

### I.     Factual Background

Defendant Van Hool NV (Van Hool) is a coach bus manufacturer organized under Belgian law with its principal place of business in Lier, Belgium.[1] DI 1 Ex. A ¶ 21. In 2015, Van Hool manufactured and sold one of its coaches to defendant ABC Bus, Inc. (ABC) and shipped it from Zeebrugge, Belgium to ABC's facilities in Florida. DI 113-1 at ¶¶ 5, 6; DI 1 Ex. A at ¶ 24. ABC then sold the coach bus to defendant Megabus.[2] DI 1 Ex. A at ¶ 26. Years later, on August 9, 2022, that bus got in an accident when one or both of its front tires failed, causing its driver, defendant Eric Naughton, to lose control of the bus. *Id.* at ¶¶ 24, 41. The bus traveled into the

---

[1] Van Hool has been liquidated pursuant to bankruptcy proceedings in Belgium.

[2] We refer to defendants Voyovation, LLC, Megabus Philadelphia, LLC, Megabus Northeast, LLC, Megabus USA, LLC, Coach USA Northeast, Inc., and Coach Leasing, Inc. collectively as Megabus.

adjacent lane, struck a truck driven by defendant Michael Reszkowski, ran into a guardrail, and overturned onto its right side. *Id.* at ¶¶ 20, 42. Passenger Cheryle-Renee Johnson was killed when the bus rolled over and the roof of the bus collapsed. *Id.* at ¶¶ 42, 43. Plaintiff David Bogdan sues as the administrator of Ms. Johnson's estate. *Id.* at ¶ 1. He brings claims of negligence, products liability, and breach of warranty against Van Hool. *Id.* at Counts V-VII. Other passengers sued as well, some of whose cases are on our docket along with Mr. Bogdan's.

ABC distributes buses throughout the United States, including Pennsylvania. *Id.* at ¶¶ 25, 26. ABC and Van Hool maintain a "strategic partnership" through which ABC serves as Van Hool's "exclusive distributor" in the "American market." DI 116-1 at 29, 31. ABC also provides maintenance services for its clients' fleets, including buses which require Van Hool equipment. *Id.* at 37. Through its membership in the Pennsylvania Bus Association, ABC attends industry expos and sells its products and services directly to consumers in Pennsylvania. *Id.* at 41-43. According to its website, two ABC employees sell ABC products and services in the Commonwealth. *Id.* at 33-35. In addition to Megabus, ABC has sold Van Hool coaches to Academy Bus, which transports passengers across the country, including in Pennsylvania. *Id.* at 46-51.

## II. Van Hool's Motion to Dismiss

On May 2, 2024, Van Hool moved to dismiss plaintiff Manu Sahay's First Amended Complaint for lack of personal jurisdiction. DI 76. Mr. Sahay opposed that Motion. DI 82. On June 24, 2024, we stayed this matter pending the outcome of Megabus's bankruptcy proceedings and denied without prejudice all pending motions.[3] DI 89.

---

[3] Before the bankruptcy stay, Van Hool also moved to dismiss the complaints of plaintiffs McKenna Blinman (DI 49 in No. 24-CV-38) and Godrey Petitfere (DI 19 in No. 24-CV-1046),

Van Hool renews its motion. Personal jurisdiction is lacking here, says Van Hool, because it does not maintain any offices, facilities, employees, or bank accounts in Pennsylvania, and is not registered to do (nor does it engage in) business in Pennsylvania. DI 113 at 2. According to Van Hool, this means that Mr. Bogdan cannot allege facts sufficient to bring Van Hool within the reach of Pennsylvania's long-arm statute. *Id.* at 5. Van Hool argues general jurisdiction is inappropriate here for the same reasons: without any contacts with the Commonwealth, Van Hool cannot be considered "at home" in Pennsylvania. *Id.* Last, Van Hool argues that specific jurisdiction is lacking because the claims do not arise from any forum-related conduct on the part of Van Hool. *Id.* at 5-6.

Mr. Bogdan counters that Van Hool has derived "decades of benefits" from its exclusive distributor relationship with ABC by placing its buses into the stream of commerce with the object that its buses would be purchased in Pennsylvania. DI 116 at 2, 18. As Mr. Bogdan sees it, specific personal jurisdiction exists even where a manufacturer's goods enter the forum indirectly, such as through a distributor, if the defendant intends for its products to enter the forum. *Id.* at 10-20. Mr. Bogdan further contends that general jurisdiction exists despite the requirement that a defendant be "essentially at home" in the forum because Van Hool's relationship with ABC presents an "exceptional" case. *Id.* at 21. Should we disagree with Mr. Bogdan's position, he asks that he be permitted jurisdictional discovery prior to ruling on Van Hool's motion. *Id.* at 22.

---

and the third-party complaint filed by Megabus (DI 46 in No. 23-CV-4180). None of these parties have filed an opposition to Van Hool's renewed Motion, so we consider Van Hool's motion to be opposed only by Mr. Bogdan. But that does not affect the analysis or outcome, which would be the same regardless of additional opposition.

4

For the reasons discussed below, we grant Van Hool's motion and dismiss Mr. Bogdan's complaint as to Van Hool with prejudice.

### III. Standard of Review

Courts may not "assert personal jurisdiction over a nonresident defendant who does not have 'certain minimum contacts with the forum'" so that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n*, 819 F.2d 434, 436-37 (3d. Cir. 1987) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts "must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state." *Id.* Pennsylvania law gives courts jurisdiction over out-of-state defendants "to the maximum extent allowed by the U.S. Constitution." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d. Cir. 2020). Given the broad language of Pennsylvania's long-arm statute, the "inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional." *Renne v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir. 1994). When a defendant asserts a lack of personal jurisdiction, the plaintiff must establish that the court has jurisdiction over the defendant through affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d. Cir. 2009).

General jurisdiction permits a court to "resolve both matters that originate within the State and those based on activities and events elsewhere." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). General jurisdiction is reserved for instances where "that corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State.'" *Chavez v. Dole Food Company, Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127) (2014)). Establishing

general jurisdiction in a forum other than a defendant's place of incorporation or principal place of business is "incredibly difficult." *Id.* at 223 (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

Specific jurisdiction presents "a more limited form of submission to a State's authority for disputes that 'arise out of or are connected with the activities within the state.'" *J. McIntyre*, 546 U.S. at 881 (quoting *International Shoe*, 326 U.S at 319). There is a three-part test for specific jurisdiction. *Danziger & De Llano,* 948 F.3d at 129. First, the defendant must have "'purposefully directed its activities' at the forum." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316-17 (3d Cir. 2007)). Second, the plaintiffs' claims must "'arise out of or relate to' the defendant's activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, the court's exercise of personal jurisdiction "must not 'offend traditional notions of fair play and substantial justice.'" *Id.* at 130 (quoting *International Shoe Co.*, 326 U.S. at 316).

Relevant to cases involving foreign defendants, "[t]he 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Rather, the defendant's contacts "must amount to a 'deliberate targeting of the forum.'" *Id.* (quoting *O'Connor*, 496 F.3d at 317).

### IV.     Analysis

Mr. Bogdan seeks to accomplish a lot with a little. He argues that *ABC*'s role as Van Hool's exclusive distributor in the United States confers personal jurisdiction over *Van Hool* because Van Hool has deliberately placed its product into Pennsylvania's stream of commerce. DI 116 at 10-20. Mr. Bogdan seeks to bolster that argument by suggesting that ABC's contacts

6

with Pennsylvania should be imputed to Van Hool. *Id.* at 18. We disagree. Lacking exceptional circumstances to justify general jurisdiction and failing the test for specific jurisdiction, we dismiss Mr. Bogdan's complaint against Van Hool with prejudice.

### A. Mr. Bogdan has not established that we have general personal jurisdiction over Van Hool

Van Hool is not "at home" in Pennsylvania. *Chavez*, 836 F.3d at 223. Van Hool does not have any offices, facilities, employees, or bank accounts in Pennsylvania, and is not registered to do business in Pennsylvania. DI 113 at 2. Van Hool's place of incorporation and its principal place of business are both in Belgium. DI 1 Ex. A ¶ 21. Nonetheless, Mr. Bogdan argues that we have general personal jurisdiction over Van Hool. DI 116 at 21.

In support of his argument, Mr. Bogdan cites language from the United States Supreme Court's decision in *Daimler AG v. Bauman*, in which the Court left "open 'the possibility that in an exceptional case' a corporation might also be 'at home'" in a place other than its place of incorporation or principal place of business. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Daimler*, 571 U.S. at 137 n. 19); DI 116 at 20. In doing so, however, Mr. Bogdan omits significant language from *Daimler*: "[i]t is one thing to hold a corporation answerable for operations in the forum State, quite another to expose it to suit on claims having no connection whatever to the forum State." *Daimler AG*, 571 U.S. at 137 n. 19 (citation omitted). And the *Daimler* court declined to exercise general jurisdiction over Daimler even though its corporate subsidiary engaged in actions within the forum that were allegedly important to Daimler's business. *Id.* at 134-140. Van Hool's exclusive distributor relationship

7

falls far short of whatever exceptional circumstances would be required to conclude that Van Hool is "at home" in Pennsylvania.[4]  *Chavez*, 836 F.3d 223.

### B. Mr. Bogdan did not establish that we have specific personal jurisdiction over Van Hool

Van Hool argues that we do not have personal jurisdiction over it because it has no contacts with Pennsylvania.  DI 113 at 4.  Mr. Bogdan responds that Van Hool's "extensive use" of ABC to market and distribute its products confers jurisdiction over Van Hool. DI 116 at 18.  We disagree.  Mr. Bogdan does not identify the required minimum contacts by Van Hool with Pennsylvania.  And regardless, his claims against Van Hool do not arise out of those contacts.

#### 1. *Mr. Bogdan did not show that Van Hool has made the requisite minimum contacts with Pennsylvania.*

Any discernable connections between Van Hool and Pennsylvania fall below the required minimum contacts to exercise specific jurisdiction.  As noted above, Van Hool is a Belgian corporation that does not have offices, facilities, employees, or bank accounts in Pennsylvania, and is not registered to do business in the Commonwealth.  DI 113 at 2.  As with general jurisdiction, Mr. Bogdan hangs his hat on ABC's contacts with Pennsylvania, arguing that ABC's actions should be imputed to Van Hool by virtue of the companies' business relationship.  DI 116 at 15-20.  Specifically, Mr. Bogdan alleges that ABC: markets Van Hool buses by employing sales representatives to connect with consumers in Pennsylvania; is a member of the Pennsylvania Bus Association and attends the Association's expos; services customer fleets requiring Van Hool equipment; and sells Van Hool buses to large clients like Megabus and Academy Bus, which carry passengers throughout the Commonwealth.  DI 116 at 16-17.

---

[4] Mr. Bogdan does not direct us to any authority where a court held such exceptional circumstances existed.

Were ABC the targeted party here, these contacts might carry more weight. But Van Hool is not ABC, and the unilateral actions of ABC are insufficient to establish specific jurisdiction over Van Hool. *D'Jamoos*, 566 F.3d at 103; *Helicopteros*, 466 U.S. at 417 (explaining that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). And even if there were a closer relationship between Van Hool and ABC (such as a parent company and its subsidiary), that would not create jurisdiction over Van Hool. *See Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980) ("The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent.")). Accordingly, we focus on Van Hool's — not ABC's — contacts in assessing specific jurisdiction.

Discounting ABC's unilateral contacts with Pennsylvania, Mr. Bogdan is left only with his stream-of-commerce argument. Because Van Hool has used ABC as its exclusive distributor of its products throughout the United States, Mr. Bogdan contends, Van Hool has purposely availed itself of the benefits and protections of Pennsylvania law. DI 116 at 15-16. We do not automatically gain specific personal jurisdiction over the manufacturer of any product that winds up in Pennsylvania. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987) ("[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state."); *J. McIntyre*, 564 U.S. at 886 (sale of machines to United States distributor which ended up in New Jersey "may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market."); *Shuker v. Smith & Nephew, PLC*, 885

9

F.3d 760, 780 (3d Cir. 2018) (concluding, in light of Supreme Court precedent, "we have no cause to revisit our Court's precedent on this issue, and we decline to adopt the Shukers' stream-of-commerce theory of specific personal jurisdiction"); *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 704-05 (E.D. Pa. 2023) (rejecting stream of commerce argument in light of Supreme Court and Third Circuit precedent).

      The Third Circuit's decision in *D'Jamoos* is instructive. There, the administrator of the decedent's estate sued defendant Pilatus, a German airplane manufacturer, for negligence, products liability, and breach of warranty — the same causes of action brought by Mr. Bogdan — after one of its aircraft crashed in State College, Pennsylvania. 566 F.3d at 97-98. The Pilatus aircrafts were sold through its Colorado-based subsidiary, which sold the Pilatus planes to independent dealers, who in turn sold them to retail customers. *Id.* at 98. Pilatus did not have any property in Pennsylvania, was not registered to do business in Pennsylvania, and had not sold or shipped any aircraft directly to Pennsylvania in the five years preceding the lawsuit. *Id.* at 99. The Third Circuit held that the district court lacked specific jurisdiction: "Pilatus's efforts to exploit a national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment of the privilege of conducting activities in that state."[5] *Id.* at 104. The same reasoning applies here. At best, the mere entry of Van Hool's buses into the stream of commerce through their sale to ABC evinces an effort by Van Hool to benefit from a national

---

[5] The plaintiffs in *D'Jamoos* also argued that specific jurisdiction existed because D'Jamoos had sent two employees to Pennsylvania to view displays at a potential supplier, and purchased over $1 million in goods or services from suppliers in Pennsylvania. *D'Jamoos*, 566 F.3d 104. The Court was unconvinced. *Id.* at 103-04.

market, rather than a deliberate targeting of Pennsylvania. [6]  *Id.*  Such efforts alone do not confer specific jurisdiction in Pennsylvania.

Guided by the Third Circuit's decisions, we find Mr. Bogdan's stream-of-commerce argument unavailing and hold that he fails at step one of the test for specific jurisdiction.

### 2. *Mr. Bogdan's claims against Van Hool do not "arise out of or relate to" any contacts by Van Hool with Pennsylvania*

Even assuming that Van Hool "purposely direct[ed] its activities" at Pennsylvania, *Danziger & De Llano,* 948 F.3d at 129, Mr. Bogdan did not show his claims "arise out of or relate to" Van Hool's purported contacts with Pennsylvania. *D'Jamoos*, 566 F.3d at 104; *Riad*, 657 F. Supp. 3d at 707-708.  In determining whether a cause of action "arises out of or relates to" the defendant's contacts with the forum, we "must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." *O'Connor* 496 F.3d at 323.  An allegation of but-for causation alone is insufficient.  *Id.*

Mr. Bogdan posits that "Ms. Johnson does not sustain life-ending injuries as the result of Van Hool's products unless she is riding a Van Hool bus operated by Megabus from New York, her location of employment, to Pennsylvania, her state of residence." *Id.*  As is the problem with but-for causation, this argument "embraces every event that hindsight can logically identify in the causative chain." *O'Connor*, 496 F.3d at 322 (quoting *Nowak v. Tak How Incs., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996)).  Without more, Mr. Bogdan cannot meet his burden. *Danziger & De Llano,* 948 F.3d at 130 ("a plaintiff cannot allege simply that but for *x*'s occurrence, *y* (which may have been remote and not foreseeable) would not have happened.").

---

[6] Mr. Bogdan's opposition brief seems to acknowledge as much.  DI 116 at 20 ("Van Hool, an international manufacturer of buses, has an entire webpage designated for '[t]he American market' and informs consumers that it designs unique products to satisfy America's 'specific regulations,' which 'requires special vehicle types.'").

11

At base, Mr. Bogdan's claims for negligence, products liability, and breach of warranty are untethered to any contacts by Van Hool with Pennsylvania. Van Hool manufactured the bus involved in the accident in Belgium. DI 113-1 ¶ 5; DI 1 Ex. A at ¶ 24. The coach was then sold to ABC and shipped from Belgium to Florida. DI 113-1 ¶ 6. ABC sold the coach to Megabus, which owned and operated the coach at the time of the accident in New Jersey. DI 1 Ex. A ¶¶ 24, 41. These events, separately or collectively, have little or nothing to do with Pennsylvania, and whatever part of them arguably had something to do with Pennsylvania did not give rise to Mr. Bogdan's claims. *D'Jamoos*, 566 F.3d at 104 (holding that plaintiffs failed to satisfy the second requirement for specific jurisdiction where claims did not arise out of alleged contacts with Pennsylvania). Failing step two of the specific jurisdiction test, Mr. Bogdan's claim as to Van Hool must be dismissed.[7]

### C. Mr. Bogdan will not be permitted jurisdictional discovery

Should we be unpersuaded by Mr. Bogdan's arguments in favor of personal jurisdiction, Mr. Bogdan requests that we grant him leave to conduct jurisdictional discovery. DI 116 at 21-22. Jurisdictional discovery is appropriate only where "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state[.]'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F. 3d 446, 457 (3d Cir. 2003). A plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010); *see Lincoln Benefit Life Co. v. AEI*

---

[7] Because Mr. Bogdan did not show that Van Hool has the requisite minimum contacts for specific jurisdiction, we need not consider whether exercising jurisdiction over Van Hool comports with principles of fair play and substantial justice. *Burger King Corp. v. Rudzewiczi,* 471 U.S. 462, 476 (1985).

*Life, LLC*, 800 F.3d 99, 108 n. 38 (3d Cir. 2015) ("jurisdictional discovery is not available merely because the plaintiff requests it.").

The record on Mr. Bogdan's motion does not suggest with "reasonable particularity" that the requisite contacts for specific jurisdiction possibly exist. *Toys "R" Us*, 318 F.3d at 457. Even if Mr. Bogdan were able to identify through jurisdictional discovery that Van Hool has the requisite contacts with Pennsylvania, he would still have to show that his claims arise out of Van Hool's contacts with the Commonwealth — an obstacle Mr. Bogdan cannot overcome. As explained above, the bus was manufactured in Belgium and thereafter shipped from Belgium to ABC's facilities in Florida. DI 113-1 ¶ 5; DI 1 Ex. A at ¶ 24. Years later, the bus was involved in the accident in New Jersey, prompting this lawsuit. DI 1 Ex. A ¶¶ 24, 41. None of that relates to Pennsylvania.

Mr. Bogdan's claims for negligence, products liability, and breach of warranty arise from actions and events which occurred outside of Pennsylvania and Mr. Bogdan has not demonstrated any plausible way that discovery could fix that problem. *Eurofins* 623 F.3d at 157; *In re Asbestos Prods. Liab. Litig. (No. VI)*, No. 2:11-CV-57079-ER, 2014 WL 1340572, at *5 (E.D. Pa. Apr. 4, 2014). Mr. Bogdan's request for jurisdictional discovery is denied.

### V.     Conclusion

We agree with Van Hool that Mr. Bogdan has not established personal jurisdiction over it in Pennsylvania. We grant Van Hool's motion and dismiss all claims against Van Hool accordingly.